UNITED STATES DISTRICT COURT
Middle District of Florida
Fort Myers Division

JERMAINE HOWARD WESLEY,
    Plaintiff,

v.                                                Case No.: 2:23-cv-1194-JLB-KCD

JOHN DOE I, Correctional Officer at F.D.O.C[1].,
JOHN DOE II, Correctional Officer at F.D.O.C.,
A. Grisheimer, Correctional Officer
Individually and in their official capacities.
    Defendants.                                              /

**I.**                  **<u>42 U.S.C. § 1983 COMPLAINT</u>**

**II.**                  **PLAINTIFF INFORMATION**

Jermaine Howard Wesley
DC#: C09093
DeSoto Correctional Institution, Annex
13617 S.E. Highway 70
Arcadia, Florida 34266-7800

**III.**                  **STATUS**

Plaintiff is currently a convicted and sentenced state prisoner.

**IV.**                **DEFENDANTS INFORMATION**

Defendant 1:    John Doe I
                        Correctional Officer
                        Avon Park Correctional Institution
                        8100 Highway 64 East
                        Avon Park, Florida 33825

Defendant 2:    John Doe II
                        Correctional Officer
                        Avon Park Correctional Institution

---

[1] The symbol F.D.O.C. stands for Florida Department Of Corrections

                      8100 Highway 64 East
                      Avon Park, Florida 33825

Defendant 3:    A. Grisheimer
                      Correctional Officer
                      Avon Park Correctional Institution
                      8100 Highway 64 East
                      Avon Park, Florida 33825

## V.                  STATEMENT OF CLAIM

Place of occurrence:  Avon Park Correctional Institution
Date of occurrence:  December 21, 2021
Federal constitutional or federal statutory rights violated:  Eight Amendment right to be free from cruel and unusual punishment.

FACTS:

1. At all times relevant to this case, Plaintiff Jermaine Wesley DC# C09093 was an inmate incarcerated in the Florida Department of Corrections, who was residing at a facility known as Avon Park Correctional whose physical address is 8100 Highway 64 East, Avon Park, Florida 33825.

2. On December 21, 2021, at approximately 1:15-1:45 PM, an announcement for recreation was called in Fox-dormitory by the Defendant Officer A. Grishemier for inmates to report to the recreation yard.

3. As instructed, the Plaintiff Jermaine Wesley DC# C09093 was assigned to Fox dormitory (which is a general population dormitory with an open bay setting). As the Plaintiff Jermaine Wesley was released from his assigned dormitory along with multiple other inmates to report to the recreation field (also known as the "yard"). Upon information and belief Florida Department of Corrections prison policy states that "Inmates are to be provided adequate space and equipment for exercise." While at all times under the supervision of an officer present or multiple officers while on duty.

4. As the Plaintiff Jermaine Wesley and several other inmates were walking from their respective assigned dormitories to report to recreation, the post where officers are to be assigned to for the purpose

of supervision was abandoned or left unattended without supervision by the defendant, John Doe I.

5. As inmates begun to enter through the entrance of the recreational yard, upon information and belief Florida Department of Corrections' policies dictated that before recreation is declared open for inmate usage, it must first be visually inspected by the recreational officer who in this case is the Defendant John Doe I. (who is ordered to report to that "post" as assigned to by the defendant John Doe II). It is the legal duty of the defendant, John Doe I to inspect all areas of the recreation yard before and after all inmates activities, as well as to be physically present at all times to "observe" monitor and "supervise" all inmates entering or leaving the recreational area, to insure that all inmates under their supervision are being accounted for. Furthermore, officers are permitted to set up precautionaries, such as metal detectors or must perform duties such as "pat searches" (which is at any time an inmate can be subjected to be physically searched by a correctional officer) to deter inmates from trafficking any concealed items that would be deemed contraband or used as a weapon to assault or harm another inmate or staff, or potentially be a danger to one's self in efforts to use "reasonable care" to minimize the risk and potential dangers to properly insure the safety and equal protection of all inmates under their supervision while on duty.

6. At all times relevant to this case, Plaintiff Wesley alleges that shortly after entering the unsupervised recreation yard along with multiple other prisoners, whose custody levels range from "close to minimum". Upon information and beliefs according to Florida Department of Corrections' policies expresses that close custody prisoners, which are considered to be "H04" violent offenders who are potentially classified as high risk inmates based on their past history of offenses or known gang affiliation (Stg). Whereas minimum custody prisoners are considered to be non-violent offenders who are potentially classified as lower risk inmates based on their past history of offenses.

7. Wesley claims that while standing directly in front of the "recreational shack", where inmates are provided the necessary equipment for the purpose of exercise use, Wesley was assaulted by an unknown prisoner wielding a sharp object, a homemade knife commonly referred to as a "shank" which is usually made of metal that has been sharpened to a fine edge to inflict physical harm or puncture on others.

8. Wesley was stabbed multiple times in the neck and back area and once on the upper left shoulder. See medical records and pictures taken on the day of the incident by supervising officer in charge at Avon Park Correctional Institution.

9. After Wesley was assaulted and left victimized by the unknown prisoner, Wesley was in imminent fear for his life due to the nature of his injuries left Wesley was left in immediate state of panic.

10. Wesley had begun to look for a correctional officer or simply any officer present or available. As previously stated, there was "not one" correctional officer physically present in sight to aid, assist, or give immediate response, or even "witness" the incident that took place.

11. Wesley, out of imminent fear for his life, began to run towards the recreation front gate entrance in an attempt to elude his attacker and in hope of finding help. Once again, the "post" (which is specific area where correctional officers are assigned to and have the legal duty to report to their pre-assigned post for supervision and be physically present at all times) was left abandoned and unsupervised by John Doe I. As a result, there was no officer insight to protect, aid, assist, or intervene, or even physically present to monitor or witness the plaintiff Wesley being assaulted, as he claims took place on the day of the incident.

12. As a result due to the conduct and totality of John Doe I, (post abandonment) and John Doe II (delegation of post assignments) who acted under the color of state law and at all times relevant to this case for failure to properly assign "post" which upon information is the legal duty as "security 9" (John Doe II) to provide or delegate specific duties to other officers who must then report to their pre-assigned post and be present at all times to insure the safety and equal protection of all inmates while under their supervision.

13. Wesley after realizing that he was all alone and in "imminent fear" for his life began to understand the severity of the situation. Wesley was losing a large amount of blood and had started to feel dizzy. Wesley removed his Dry-Fit 2X T-shirt and placed it on his injuries (specifically on back and neck area) attempting to stop the bleeding while visibly seeking medical attention or help form a correctional officer. (See bloody Dry-Fit 2X T-shirt stored as evidence).

14. At that point, Wesley, while eluding his unidentified attacker, had dropped his T-shirt and continued running towards the recreation front gate entrance, hoping to find help form a correctional officer (John Doe I).

15. Upon arriving to the recreation front gate entrance, Plaintiff Wesley noticed that the post was abandoned or left unattended. Upon information and beliefs, Defendant John Doe I who acted under the color of state law was supposed to be present as being assigned to that "specific area" on the day of this incident by John Doe II.

16. As a result, Wesley was forced to seek further safety and protection by leaving the recreation yard and returning to his assigned dormitory (Fox Dormitory) (Open-Bay) (side 1) to escape his unidentified attacker while being in imminent fear for his life.

17. Once upon arriving to his assigned dormitory, Wesley entered into the bathroom to inspect the injuries which occurred as alleged in the above statements.

18. After visually seeing that he was in desperate need of medical attention, Wesley left the bathroom which is located several feet from the officer station, and began to repeatedly knock on the officer station's window begging for help and pleading for help while trying to get the attention of the only officer present, after the alleged incident took place.

19. Officer A. Griesheimer, who acted under the color of state law, intentionally ignored Wesley and continued to fraternize with another unknown inmate on F-2 side of the dormitory for several minutes as Wesley can be seen visibly on camera knocking on the officer station's window looking for help.

20. After Defendant Officer A. Griesheimer, who was acting under the color of state law, purposely ignored Wesley for several minutes (5), Officer A. Griesheimer went to the master control panel and opened the F-1 side door of the dormitory which releases inmates and allow others inside the dormitory, Wesley exited the dormitory out of fear that his unidentified attacker could have followed him inside the dormitory which would put Wesley at greater risk to be assaulted again.

21. Wesley, who was in desperate need of medical attention, felt that it was I his best interest to seek further safety and protection by fleeing

5

from his assigned dormitory to the "MTC" building, where the medical building is located and medical staff are on standby for emergency situations.

22. Upon exiting his assigned dormitory, Wesley, who was wearing only a jacket, was stopped by Sergeant Holden. Wesley explained to Sgt, Holden the nature of his injuries and that he was in desperate need of medical attention. Wesley at that point removed his jacket and revealed the nature of his injuries to Sgt Holden.

23. Sergeant Holden immediately spoke into her radio and called for "emergency traffic". Sergeant Holden directly escorted Wesley to a certain point then transferred Wesley into the custody of another officer by the name of Windon (whose rank is unknown) who continued to escort Wesley to the MTC building.

24. Upon arrival in the MTC building, instead of receiving urgent medical care/attention by the medical staff, Wesley was taken to a small office where Wesley's injuries were photographed by the supervising officer in charge and simultaneously being interviewed by sergeant Willis who is knowledgeable on gang affiliations which Plaintiff Wesley has no prior or any history of any gang affiliations.

25. After being interviewed, investigated, and questioned by the supervising officer in charge and Sgt. Willis for 10-15 minutes, the Plaintiff Wesley finally received medical attention by medical staff and was subsequently taken to administrative confinement under protective custody status from December 21st 2021 to January 28th 2022 when the Plaintiff Wesley was transferred to DeSoto Correctional Institution without any of his personal property.

## VI.     EXHAUSTION OF ADMINISTRATIVE PROCEDURES

1. Plaintiff Wesley used the prisoner's grievance procedure available at DeSoto Correctional Institution in an attempt to try to resolve the problem. On February 4, 2022, the Plaintiff Wesley presented facts relating to this complaint as an informal grievance addressed to the warden at DeSoto Correctional Institution.

2. On February 10, 2022, the Plaintiff Wesley received a response stating that his informal grievance which was submitted on February 4, 2022 had been returned without action. (See Grievance log # 564-2202-0094.

3. On February 23, 2022, the Plaintiff Wesley filed for administrative appeal, readdressing his complaint to the Warden at DeSoto Correctional Institution in an attempt to resolve the problem. Plaintiff Wesley received a response to his appeal on February 24, 2022, which states that his request for administrative appeal was being returned without action. (See grievance log# 2202-564-085).

4. On March 3, 2022, the Plaintiff Wesley presented facts relating to this complaint as an informal grievance addressed to the Warden at DeSoto Correctional Institution in an attempt to properly address and resolve the problem.

5. On March 7, 2022, the Plaintiff Wesley received a response stating that the informal grievance re-addressed to the warden at DeSoto Correctional Institution had been returned without action. (See informal Grievance log # 564-2203-0056).

6. On March 15, 2022, the Plaintiff Wesley filed a grievance to the secretary of Florida Department of Corrections which was forwarded to FDOC's central office through the institutional mailing log# 03-33 which was received on March 25, 2022. (See Florida Department of Corrections request for Administrative Remedy or Appeal grievance # 22-6-08971).

7. On March 30, 2022, the Plaintiff Wesley received a response to grievance log# 22-6-08971 advising Wesley that "it is not within a inmate scope of responsibility or authority to recommend disciplinary action regarding staff." And that Wesley's request for administrative appeal is being returned without action.

8. At this point the Plaintiff Wesley had exhausted all remedies to the best of his ability at the administrative institutional level and is seeking to file a complaint to the higher court.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment:

1. Granting Plaintiff Wesley a declaration that the acts and omission herein violated his rights under the Eight Amendment of the United States Constitution.

2. Granting Plaintiff Wesley compensatory damages in the amount of $15,000.00 and $5,000.00 in punitive damages and to be recompensed for his injuries, mental anguish pain and sufferings due to the lack of supervision of all officers / prison officials who were found to be at fault. And award of cost for therapy for P.T.S.D. (Post Traumatic Stress Disorder) resulting from his physical injuries.

3. Plaintiff Wesley also seeks a jury trial on issues triable by jury.

4. Plaintiff also seeks recovery of the cost in this suit.

5. And any additional relief this Court deems just, proper, and equitable.

## VIII. LITIGANT'S LITIGATION HISTORY

To date, Plaintiff has not brought any other lawsuits in the state or federal court while confined.

## IX. PLAINTIFF'S DECLARATION AND WARNING

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Respectfully submitted

Dated: December 12, 2023

*Jermaine Wesley*
Jermaine H. Wesley, DC#: C09093
Plaintiff, pro se
DeSoto Annex
13617 S. E. Highway 70
Arcadia, Florida 34266-7800